## STANDARD OIL CO. *v.* THE GARDEN CITY.

*(District Court, S. D. New York.   May 10, 1889.)*

**1. COLLISION—OVERTAKING VESSELS—CROWDING.**
   A ferry-boat overtaking a tug going up East river near Corlear's Hook crowded her near the shore in passing.   The tug meeting at the same time the cross-currents of the ebb-tide from Jackson street was swung involuntarily by the bows under the guard of the ferry-boat's port quarter, through the effect of the cross-currents or the suction of the ferry-boat, or both combined, and was sunk.   *Held*, that the ferry-boat was liable (1) for failure, as the overtaking vessel, to keep out of the way, as required by rule 22; (2) for running too near the tug in violation of 4 Edm. St. N. Y. 60, requiring boats to navigate as near mid-river as possible, and 1 Rev. St. N. Y.\* 684, § 7, requiring a steamer passing another to keep off 20 yards.

**2. SAME—FAILURE TO STOP—CROSS-CURRENTS—SUCTION.**
   The tug was also in fault for failure to starboard in time to avoid the effect of the cross-currents or suction; or, if the space was too narrow, for not stopping, as required by rule 22, and the damages should be divided.

In Admiralty.   Libel for collision.

*Owen, Gray & Sturges,* for libelants.

*R. D. Benedict*, for claimants.

BROWN, J. At about 2 o'clock in the afternoon of October 4, 1888, as the ferry-boat Garden City was making her trip from James' slip to Hunter's point, she overtook the steam-tug Imperial in the vicinity of Jackson street, also bound up the East river, close to the New York shore; and in passing the tug she came into collision with her, the tug's starboard bow running under the guards of the steamer's port quarter about 10 feet aft of her paddle-wheel. The tug, being caught fast by the iron braces under the steamer's guards, was dragged ahead for a considerable distance, when, careening over to port, she speedily sank near the dock at Corlear's street. The evidence shows that the Garden City, on leaving James' slip, went out about 400 feet into the river; and then, heading up against the last of the ebb-tide, continued to haul in gradually more and more towards the New York shore, either to go in a weaker tide, or to avoid several vessels coming down in the middle of the river. She began to lap the Imperial a short distance below the Jackson-Street piers, which are piers 53 and 54. The weight of pooof is that the ebb-tide coming round Corlear's Hook strikes the upper half of pier 54, and is thence deflected towards the Brooklyn shore; so that at about the middle of that pier the slack water or eddy begins, outside of which a considerable current sets over diagonally from the middle of pier 54 towards the opposite shore. The evidence shows that the Imperial went within 10 or 15 feet of the end of pier 53, so as to be within the slack water there; that her propeller carried away the line of one of several persons fishing with rods from the end of the wharf; and that the Garden City, already lapping, if not fully abreast of her, was not more than from 30 to 75 feet outside of her, in the edge of the true tide; that when the pilot-house of the Garden City passed ahead of the Imperial—probably abreast of pier 54—she was not more than from 25 to 50 feet away from her, and was headed in a little towards the hook. When the bow of the Imperial struck and caught in the braces under the guards of the Garden City, the evidence shows that this happened by a somewhat sudden approach towards the Garden City, either above the line of pier 54, or at least abreast of the upper part of that pier, and when the Garden City was probably not over 50 feet from the end of that pier. The place of collision, therefore, must have been within the true tide, and somewhere from 50 to 150 feet above the point where the Imperial struck the cross-current on coming out of the slack water below. This cross-current would necessarily swing her bows to starboard towards the Garden City, unless it were counteracted by a previous starboard helm. In addition to this there was a liability of the Imperial to be drawn towards the Garden City from the suction of her paddle-wheels if she came near enough to be affected by them. *The City of Brockton*, 37 Fed. Rep. 897. The pilot of the Imperial put his helm hard a-starboard when he saw his bow begin to fall away towards the Garden City, and at the same time he signaled to reverse. The engines were stopped, but could not be got to reverse, and the collision occurred

in a few seconds afterwards. By a practice not to be commended, the pleadings make no reference to the immediate and specific causes of the collision; viz., the cross-current of the tide from the upper half of pier 54, or the suction of the Garden City. Except for one or both of these causes no collision would have happened. The Imperial did not port her helm, or voluntarily change her course; and though the Garden City unjustifiably continued hauling in too near the New York shore, that would not have caused the collision unless either her suction or the cross-current swinging the Imperial's bows had carried her towards the Garden City.

1. The Garden City must be held to blame for unnecessarily going too near the Imperial; for crowding her inshore; and for forcing her, without good reason, into a situation where there was manifest danger if she kept on, and which the Imperial could only avoid with certainty by stopping. This was not only imprudent and unjustifiable navigation on the part of the Garden City, and a failure "to keep out of the way," as required by rule 22, but it was in violation of two express statutes of the state; one of which requires boats to navigate "as near the middle of the river as may be," (4 Edm. St. 60,) and the other, to keep off 20 yards in passing another steamer, (1 Rev. St. *684, § 7.) These statutes are not obsolete, but have been frequently applied in this court, both as obligations, and as guides in determining what is prudent navigation. *The J. M. Thompson*, 12 Fed. Rep. 192; *The Uncle Abe*, 18 Fed. Rep. 272; *The Warren*, Id. 559; *The Bay Queen*, 27 Fed. Rep. 813; *The Maryland*, 19 Fed. Rep. 555; *The Sam Rotan*, 20 Fed. Rep. 335; *The Columbia*, 29 Fed. Rep. 719; *The Doris Eckhoff*, 32 Fed. Rep. 556; *The Britannia*, 34 Fed. Rep. 557, 558. They must be observed where no necessity is shown for departing from them. I have no doubt that the Garden City did not keep 20 yards away from the Imperial in passing, nor as far from the shore as she might easily have done; and no valid excuse is shown for not doing so. The other vessels that were coming down did not require her to go so near the shore. Her violation of these requirements was obviously most embarrassing to the Imperial, and plainly contributed to the collision.

2. Though the primary cause of the collision was the fault of the Garden City, as above described, I am not satisfied that the Imperial is without blame; or that the collision might not have been avoided by the Imperial, notwithstanding the Garden City's faults, had reasonable and proper attention been given to the duties evidently imposed by the situation. The immediate cause of the Imperial's swinging to starboard was not, I think, any supposed suction of the Garden City, but the cross-current of the ebb-tide; which, striking the Imperial's port bow as she came up from the slack water below carried her bows to starboard. The place of collision abreast of the upper corner of pier 54, or perhaps a little above it, is precisely where the effect of such a current would be felt. The pilot of the Imperial was familiar with the tidal currents at this place; and when the Garden City was already one-third of her length ahead of him, and evidently passing him so near to pier 54, it was his

evident duty, in order to avoid collision from being swung round by the cross-current, which he knew was ahead of him, either to stop his boat in the slack water before reaching that cross-current, or else to have put the helm sufficiently to starboard before reaching the current to make sure that his stem would not be swung off by it. He did starboard his wheel more or less, and finally, but too late, put it hard a-starboard. There are discrepancies in his testimony as to the amount and time of his starboarding; and in one place he states distinctly that he did not starboard his wheel until he noticed his stem swinging to starboard, when abreast of the Garden City's paddle-box. As the cross-current must have struck his stem near the lower corner of pier 54, the strong starboarding, if delayed until that time, was too late. Whether the delay was caused by temporary inattention on account of the incident on shore, or by some other cause, is immaterial. It is sufficient to charge the Imperial with blame that, after the purpose of the Garden City to pass her was plain, and after she had partly passed her, hauling still further towards the shore, the Imperial continued on in very narrow quarters, and in the face of manifest danger, without either stopping earlier, or seasonably starboarding sufficiently to counteract the cross-current. Rule 22. I doubt the accuracy of some of the testimony, that she came up within two or three feet of pier 54. If she went so near as that, doubtless no starboarding could have withstood the effect of the cross-current; but if she did go so near, her fault is the more emphasized in keeping on without necessity and running into so dangerous a position. The libelant is entitled to a decree for half its damages.